***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Rowell and the briefs and oral arguments of the parties. With reference to the errors assigned by plaintiff, the Full Commission finds that plaintiff has not shown good grounds to reconsider the evidence, receive further evidence or to rehear the parties or their representatives. Accordingly, the Full Commission AFFIRMS with modifications, the Opinion and Award of the Deputy Commissioner and enters the following Opinion and Award.
 *********** ISSUES TO BE DETERMINED *Page 2 
Whether plaintiff sustained a compensable occupational hearing loss and if so to what indemnity and medical compensation, if any, is he entitled.
 ***********
The Full Commission finds as facts and concludes as matters of law the following, which were entered into by the parties at the hearing, and in a Pre-Trial Agreement which was admitted into the record and marked as Stipulated Exhibit (1) as:
 STIPULATIONS
1. All parties are properly before the Industrial Commission, and the Industrial Commission has jurisdiction of the parties and of the subject matter.
2. All parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
3. All parties have been properly designated and there is no question as to misjoinder or nonjoinder or parties.
4. An employment relationship existed between the parties for all relevant time periods, and that Alcoa, Inc., is the defendant-employer and Mr. Lanny D. Thompson is the plaintiff-employee.
5. At all times relevant to this action, defendant-employer was self-insured for the purposes of meeting the requirements of the North Carolina Workers' Compensation Act, with the Specialty Risk Services, as its Third-Party Administrator.
6. Plaintiff's average weekly wage as of February 27, 2002, when he last worked for defendant-employer, would entitle him to a weekly compensation rate of $554.67 per week.
7. Defendants timely denied liability for plaintiff's claim of a hearing loss due to an injury by accident or occupational disease. *Page 3 
8. Plaintiff last worked for defendant-employer on February 27, 2002.
9. At the hearing, the parties submitted the following:
a. A Pre-Trial Agreement which was admitted into the record and marked as Stipulated Exhibit (1) and;
b. A Packet of Stipulated Exhibits, which was admitted into the record and marked as Stipulated Exhibit (2), and which included Industrial Commission Forms and Filings and Discovery Documentation.
10. Also made part of the record are the deposition transcripts of Dr. Mark T. Emory and Dr. Kimberly Lykins, (D.O.).
 ***********
Based upon a review of all the credible evidence in the record, the Full Commission makes the following:
 FINDINGS OF FACT
1. As of the date of the hearing before the Deputy Commissioner, plaintiff was fifty-four (54) years of age with his date of birth being January 2, 1954. Plaintiff was hired by defendant-employer at its Badin location on March 18, 1977 and officially retired in August 2005. However, plaintiff last worked for defendant-employer on February 27, 2002.
2. Prior to working for defendant-employer, plaintiff worked construction as a laborer building houses. Plaintiff has also performed various farm related work on various machines, and continued to do so as of the date of the hearing before the Deputy Commissioner. While operating farm related machinery, plaintiff testified, and the Full Commission accepts as credible, that he has worn some type of hearing protection since the 1970s. *Page 4 
3. Plaintiff testified that during the ten-year period prior to the hearing before the Deputy Commissioner, he had not hunted. Plaintiff further testified that prior to that ten-year period he hunted with a rifle on an occasional basis. Additionally, plaintiff testified that he no longer had any use for guns. Plaintiff's testimony in this regard is accepted as credible.
4. As for plaintiff's pre-employment hearing levels, Dr. Kim Lykins, medical director of occupational health for Stanley Memorial Hospital, testified that plaintiff had mild to moderate high frequency hearing loss prior to his employment with defendant-employer. Dr. Mark Emery, a board certified otolaryngologist, similarly testified that plaintiff had mild to moderate sensorineural hearing loss, more in the right ear than the left ear prior to his employment with defendant-employer. Dr. Emery further testified that plaintiff's hearing levels at that time were worse than expected for someone his age.
5. When plaintiff began his employment at defendant-employer's factory, he worked in the pot-room where he produced raw aluminum. Plaintiff worked in the pot-room for ten (10) years. While working in that capacity, plaintiff's duties required him to operate a jackhammer and a crust breaker on a regular basis to remove aluminum from molds.
6. After this initial ten-year period, plaintiff then worked for one year as a serviceman for the aluminum pots.
7. Plaintiff next worked for nine months in the cathode department as a relief person. In the cathode department, plaintiff worked the majority of each day in the "pot-rooms" where it was noisy.
8. After working in the cathode department, plaintiff was trained as an electrician, and worked for eight to nine (8-9) years as an electrician within the plant in different areas. *Page 5 
Many of these areas were significantly noisy, resulting in plaintiff being unable to speak to co-workers or having to yell from a very close distance for co-workers to hear.
9. In 1997, plaintiff transferred from the Badin plant to defendant-employer's Yadkin Division and the Narrows Dam. At this location, plaintiff worked as a maintenance mechanic which required him to be in the vicinity of turbines that generated electricity. The number three turbine at that location was particularly noisy. Also, for approximately thirty (30) minutes each week plaintiff had to work in the lower tunnels, where water exhaust systems were located which were also significantly noisy. Overall, as a maintenance mechanic, plaintiff worked an average of three-to-five (3-5) hours per week in areas that were sufficiently noisy such that he would have to go outside the plant to speak to others. Plaintiff worked in this capacity until February 27, 2002, his last date of employment with defendant-employer.
10. In a January 16, 1988 Memorandum, defendant-employer identifies employees that had hearing loss and were, therefore, required going forward to wear hearing protection devices in all areas of the Badin Plant where noise levels exceed 85 decibels. Plaintiff is identified in this document as being one of the employees having sustained hearing loss.
11. As for the availability of hearing protection devices, plaintiff testified that such devices were readily available for his use after the initial couple of years he worked for defendant-employer. The initially provided hearing protection devices were earplugs, with plaintiff having access to earmuffs in the final ten to twelve (10-12) years of his employment. Additionally, plaintiff was trained in the proper use of hearing protection devices, and testified that once available, he always wore a hearing protection device. *Page 6 
12. The various earplugs used in defendant-employer's facilities and by plaintiff had noise reduction ratings of 26 to 35 decibels. The earmuffs used in defendant-employer's facilities and by plaintiff had noise reduction ratings of 19 to 24 decibels.
13. Ms. Stephanie Williams, an industrial hygienist, testified about the noise exposure study performed at defendant-employer's Badin plant. The studies for the position of plant electrician, the job plaintiff held prior to that of maintenance mechanic, showed noise level exposures ranging from 71.3 decibels to 83.9 decibels. For a maintenance mechanic, plaintiff's final position for defendant-employer, the noise studies showed noise level exposures of 46.5 decibels to 88.8 decibels in different areas in the dams.
14. Plaintiff testified that he has experienced a high pitched ringing in his ears for the last fifteen (15) years that has worsened over time. Plaintiff further testified that he has difficulty hearing certain voices at times.
15. Based upon the totality of the credible evidence of record, during the period of plaintiff's employment with defendant-employer he was periodically exposed to harmful noise levels exceeding 90 decibels. In the anode building, noise levels ranged from 79 to 90.1 decibels, with an average of 85.2 decibels. In the rodding area, the range was 85.7 to 92.9 decibels, with an average of 89.2. In the cathode area, the range was 83.6 to 98.6 decibels, with an average of 89.6. In the pot-room, the range was 77.9 to 94.3 decibels, with an average of 85.4. In the pot-lining area, the range was 80.1 to 101.0 decibels, with an average of 90.8. In the ingot area, the range was 85.8 to 93.6 decibels, with an average of 89.9. Plaintiff performed work in each of these areas or rooms.
16. During the period of his employment with defendant-employer, plaintiff received regular audiogram tests. The results of these tests revealed continued high frequency hearing *Page 7 
loss. Dr. Lykins testified that the results of plaintiff's 2003 audiogram and his 2005 audiogram revealed essentially normal hearing at the 500, 1000, and 2000 frequency levels, with a loss of hearing only above those levels. Dr. Emory gave a similar opinion.
17. Plaintiff had a pre-employment audiogram in 1977 as well as post-employment audiograms in 2003 and 2005. Dr. Emery testified that while there was a small discrepancy between the 2003 and 2005 tests, he believed the results were consistent with one another.
18. N.C. Gen. Stat. § 97-53(28)(d) provides that an employer is only liable "for the difference between the percent of occupational hearing loss . . . and the percentage of loss established by the pre-employment and audiometric examination." Accordingly, the Commission must determine the difference between plaintiff's pre-employment hearing loss levels by examining his 1977 audiogram and his occupational hearing loss levels by examining his 2003 audiogram. In his post-oral argument supplemental brief, plaintiff does not make this required determination.
19. N.C. Gen. Stat. § 97-53(28)(i) provides that "No claim for compensation for occupational hearing loss shall be filed until after six months have elapsed since exposure to harmful noise with the last employer." Plaintiff last worked for defendant-employer on February 27, 2002. Accordingly, use of the 2003 audiogram is proper in making the necessary calculations in this matter, given that it was conducted more than six months since plaintiff last worked for defendant-employer.
20. The method by which to calculate the levels from which the difference is determined is found in N.C. Gen. Stat. § 97-53(28)(g), which states that "The percentage of hearing loss shall be calculated as the average, in decibels, of the thresholds of hearing for the frequencies of 500, 1,000, 2,000, and 3,000 cycles per second." The results of plaintiff's 1977 *Page 8 
audiogram at these frequencies reveal levels of 5, 0, 0, and 35 for his better ear and levels of 5, 0, 10 and 30 for his worse ear. In his post-oral argument supplemental brief, plaintiff lists levels of 5, 0, 0, and 30, as opposed to the correct levels of 5, 0, 10 and 30, for the left ear, leading to him mistakenly indentify it as the better ear. The results of plaintiff's 2003 audiogram at these frequencies reveal levels of 15, 15, 25 and 60 for his better ear and levels of 15, 20, 30, and 60 for his worse ear.
21. N.C. Gen. Stat. § 97-53(28)(g) also provides that the four frequency loss levels are to be added together and divided by four "to determine the average decibel loss." From 1977, the result for plaintiff's left/better ear is 11.25 and the result for his right/worse ear is 10. From 2003, the result for plaintiff's left/better ear is 28.75 and the result for his right/worse ear is 31.25.
 1977 Audiogram 2003 Audiogram
 Better Ear Worse Ear Better Ear Worse Ear
 5 5 15 15
 0 0 15 20
 0 10 25 30
 30 35 60 60
 =40 =45 =115 125
 ÷4 ÷4 ÷4 ÷4
 =10 =11.25 =28.75 =31.25

Next, to determine the binaural percentage loss, "the percentage of impairment in the better ear shall be multiplied by five." From 1977, the result for plaintiff's better ear is 10 and when multiplied by 5 equals 50.00. From 2003, the result for plaintiff's better ear is 28.75 and when multiplied by 5 equals 143.75.
 1977 Levels for the Better Ear 2003 Levels for the Better Ear
 10.00 28.75
 x 5 x 5
 =50.00 =143.75
 *Page 9 
Then, "[t]he resulting figure shall be added to the percentage of impairment in the poorer ear, and the sum of the two divided by six. The final percentage shall represent the binaural hearing impairment." From 1977, the figure of 50.00 is added to the percentage of impairment for plaintiff's worse ear of 11.25 to equal 61.25, which when divided by 6 results in a pre-employment binaural hearing impairment level of 10.21. From 2003, the figure of 143.75 is added to percentage of impairment for plaintiff's worse ear of 31.25 to equal 175.00, which when divided by 6 results in a post-employment, or occupational, binaural hearing impairment level of 29.16.
 1977 Results 2003 Results
 50.00 143.75
 50.00 143.75
 +11.25 +31.25
 =61.25 =175.00
 ÷6 ÷6
 =10.21 =29.16

22. With these binaural hearing impairment results, the analysis then returns to N.C. Gen. Stat. § 97-53(28)(d) to determine the difference between said results, which calculates to be 18.95 (29.16 — 10.21 = 18.95).
23. Because the analysis pursuant to N.C. Gen. Stat. § 97-53(28) yields binaural hearing impairment result of 18.95, a level less than the statutory threshold level of 26.00, plaintiff did not sustain a compensable hearing loss as the result of his employment with defendant-employer.
 ***********
Based on the foregoing Stipulations and Findings of Fact, the Full Commission enters the following: *Page 10 
 CONCLUSIONS OF LAW
1. Based upon the totality of the credible evidence of record, during the period of plaintiff's employment with defendant-employer, he was periodically exposed to harmful noise levels exceeding 90 decibels. N.C. Gen. Stat. § 97-53(28)(a).
2. Plaintiff had high frequency hearing loss predating his employment with defendant-employer that was not the result of said employment. N.C. Gen. Stat. § 97-53(28).
3. Because the analysis pursuant to N.C. Gen. Stat. § 97-53(28) yields a binaural hearing impairment result of 18.95, a level less than the statutory threshold level of 26.00, plaintiff did not sustain a compensable hearing loss as the result of his employment with defendant-employer. N.C. Gen. Stat. § 97-53(28).
 ***********
Based on the foregoing Findings of Fact and Conclusions of Law, the Full Commission enters the following:
 AWARD
1. Plaintiff's claim for hearing loss pursuant to the Act is hereby DENIED.
2. Each side shall bear its own costs.
IT IS FURTHER ORDERED that this matter is HEREBY REMOVED from Full Commission hearing docket.
This the ___ day of August, 2009.
S/___________________
BERNADINE S. BALLANCE,
COMMISSIONER
CONCURRING:
S/___________________
DIANNE C. SELLERS
COMMISSIONER
S/___________________
STACI T. MEYER
COMMISSIONER
 *Page 1